UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURYN GIST-REED, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALPHA ANALYATICAL LABORATORIES, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:24-cv-03282-DJC-CSK<br><br>**ORDER** |

Under the Class Action Fairness Act ("CAFA"), a defendant to a class action lawsuit can remove the suit from state court to federal court if certain federal jurisdiction requirements are met.  Here, Defendant Alpha Analytical Laboratories, Inc. did so, but after a delay of several months.  Plaintiff Lauryn Gist-Reed asks this Court to remand the case to the state court, arguing that Alpha Analytical filed outside CAFA's statutory time frame for remand, and that even if the removal was proper, there is an applicable CAFA exemption.  For the reasons discussed below, the Court finds that Defendant's removal under CAFA was proper and that the local controversy

1

exemption to CAFA does not apply. Accordingly, the Court declines to remand the case to state court.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Lauryn Gist-Reed is a resident of Tennessee,[1] who, from approximately October 2023 to November 2023, worked as an hourly-paid, nonexempt Lab Technician for Defendant Alpha Analytical Laboratories, Inc. ("Alpha Analytical") in California.[2] (ECF No. 1, containing First Amended Complaint (Ex. I), hereinafter "FAC," ¶¶ 8, 14.) On February 28, 2024, Plaintiff filed her original complaint bringing seven employment-related claims against Defendant. (ECF No. 1, containing original Complaint (Ex. A), ¶ 2.) On June 10, 2024, she filed a First Amended Complaint, adding two additional claims against Defendant.[3] (See *generally*, FAC.) Neither complaint contained a specified damages amount or an amount in controversy. On November 25, 2024, Defendant removed the case to this Court under CAFA. (ECF No. 1, containing Petition for Removal.) On February 19, 2025, the parties stipulated to waive oral argument, and the matter was deemed submitted. (ECF Nos. 18, 19.)

## LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a). Under CAFA, federal courts have original

---

[1] In her FAC filed June 10, 2024, Plaintiff asserts that she is a resident of California. But, Defendant provides evidence that Plaintiff moved to Tennessee on June 5, 2024. Defendant attaches copies of internet posts indicating that Plaintiff permanently moved to Tennessee on that date. (*See* ECF No. 1, containing Declaration of Kelly Ann Buschman, Exs. A and B.) Plaintiff does not meaningfully rebut this evidence. Because Plaintiff moved five days *before* the filing of the FAC, the Court accepts that she is not a resident of California. *See* 28 U.S.C. § 1332(d)(7) (citizenship of the proposed plaintiff is pegged to the filing date of the operative complaint).

[2] Plaintiff states that she worked for Defendant's Sacramento location (FAC ¶ 8) and Los Angeles location (FAC ¶ 14).

[3] In her Motion to Remand, Plaintiff states there are ten causes of action. (ECF No. 14 at 2.) However, the FAC lists only nine causes of action. (*See generally*, FAC.)

jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least 100 members, and the aggregated amount-in-controversy exceeds $5 million dollars. *See* 28 U.S.C. § 1332(d)(2), (d)(5), (d)(6), hereinafter "CAFA."

A defendant removing a class action filed in state court pursuant to CAFA need only plausibly allege in the petition for removal that the CAFA prerequisites are satisfied. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). If the plaintiff contests the alleged amount in controversy, however, the defendant bears the evidentiary burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million. *See id.* at 88 (quoting 28 U.S.C. § 1446(c)(2)(B)); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978, 982 (9th Cir. 2013). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014). The Supreme Court has advised, however, "that no antiremoval presumption attends cases invoking CAFA" in part because the statute was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee*, 574 U.S. at 89 (citations and quotations omitted); *see Ibarra v. Manheim Investments., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

## DISCUSSION

Plaintiff argues that Defendant improperly removed this suit under CAFA. For the reasons discussed below, the Court disagrees and finds that Defendant's removal of this case was properly effectuated under CAFA. The Court also finds that Plaintiff has not met her burden of proof to establish that the local controversy exemption applies.

**A. Defendant Properly Removed This Suit Under CAFA**

Typically, removal under CAFA must be initiated "within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C.

§ 1446(b)(1).  Then, three jurisdictional requirements must be satisfied: (1) the parties must be diverse, (2) the proposed class must be over 100 members, and (3) the aggregated amount-in-controversy must exceed $5 million dollars.  *Id.* § 1332(d)(2), (d)(5), (d)(6).  If the initial documents do not facially satisfy the elements of removal, a defendant is able to remove a suit within thirty days "from which it is ascertainable that the case is removable."  *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1124 (9th Cir. 2013); *see* 28 U.S.C. § 1446(b)(3).

### 1.  The Removal Was Timely

The threshold question the Court must address is whether Defendant timely removed the suit under CAFA.  It did.  While Defendant's removal of the case came substantially after the initial thirty-day window from when Plaintiff filed her FAC, Plaintiff's FAC failed to facially satisfy the elements of removal.  Plaintiff's FAC did not specify that the parties were diverse, failed to identify the number of potential class members, and did not include an alleged amount in controversy, thereby requiring Defendant to independently assess the viability of removal under CAFA.  Defendant plausibly alleges that its removal of the case came after it independently became aware that the parties are diverse.  (*See* ECF No. 1, containing Petition for Removal, ¶ 48.)  This discovery regarding diversity between the parties, which was not facially apparent from Plaintiff's operative filing, combined with Defendant's need to otherwise assess its own records to identify a potential class size and amount in controversy, supports the Court's finding that Defendant properly removed the matter within thirty days of determining that it could properly do so.  *See Roth*, 720 F.3d at 1124.  Accordingly, the Court proceeds to assess whether the three elements of federal jurisdiction under CAFA are met.

### 2.  The Requirements of CAFA Are Met

The first element of federal jurisdiction under CAFA is diversity between the parties.  The parties in this case are diverse.  Defendant is a California corporation.  (*See* ECF No. 1, containing Petition for Removal, ¶ 43.)  And while Plaintiff asserts she

is a citizen of California, Defendant has demonstrated via the inclusion of online posts that Plaintiff had moved to Tennessee prior to the filing of her FAC and removal to this Court. (ECF No. 1, containing Declaration of Kelly Ann Buschman, hereinafter "Buschman Decl.", Exs. A and B;) *see Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Defendant offers evidence that Plaintiff herself indicated she worked in Tennessee commencing in June 2024. (*See* Buschman Decl. Exs. A and B.) The Court therefore finds that Plaintiff was a citizen of Tennessee at the filing of her FAC. Because one party is a California citizen and the other a Tennessee citizen, the parties are diverse.

The second element of federal jurisdiction under CAFA is a proposed class of over 100 members. Plaintiff's FAC does not identify the number of prospective class members, nor whether the ultimately determined number would be greater than 100. Therefore, it is not unreasonable – and indeed, it is common – for the removing defendant to have to assess their own employment records to determine this information. Defendant appropriately ascertained its own employment records and the allegations in the FAC to determine that Plaintiff's proposed class size would consist of at least 123 members, satisfying the 100-member threshold. (*See* ECF No. 1, containing Petition for Removal, ¶ 51.)

The third element of federal jurisdiction under CAFA is an amount in controversy over $5 million. Plaintiff's FAC gives no indication that the amount in controversy for the class exceeds or is expected to meet that threshold amount. Accordingly, the Defendant has the burden to establish the amount in controversy. *Ibarra*, 775 F.3d at 1197 ("When plaintiffs . . . have prepared a complaint that does not assert the minimum in controversy . . . if a defendant wants to pursue a federal forum under CAFA, that defendant . . . has the burden to put forward evidence showing that the amount in controversy exceeds $5 million."). Defendant does so here, arguing that Plaintiff's FAC puts $13,373,101.20 in controversy, based solely on the alleged

wage and hour violations. (ECF No. 1, containing Petition for Removal, at 10.) Plaintiff rejects this number, arguing that the amount is "plucked from thin air." (ECF No. 14 at 9, Plaintiff's Motion to Remand, hereinafter "Mot.") A plaintiff, as here, can challenge a defendant's assertion of the amount in controversy. *Ibarra*, 775 F.3d at 1197. But, when doing so, a plaintiff must then submit their own proof to the court, and the court will then consider the evidence from both sides and decide whether the amount-in-controversy has been met. *Id.*

Here, Plaintiff does not offer *any* evidence that the amount in controversy is below the necessary $5 million. Instead, Plaintiff merely asserts that Defendant's number is wrong. While a defendant's proposed controversy calculations "need some reasonable ground underlying them," Plaintiff must do more than contest that validity: Plaintiff must instead offer her own numbers and supporting evidence. *See id.* at 1197, 1199. And while Plaintiff plausibly argues that Defendant's arrival at its approximately $13 million number is on shaky ground (i.e., Defendant relies on a hypothesis of a very high rate of violations across the prospective class), Plaintiff offers no data, affidavits, nor evidence for the Court to consider in the alternative. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("And if [Plaintiff] believed that some other assumption would have been *more* reasonable, she was free to propose that rate."); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) ("An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be less than the requisite amount.") (internal quotations omitted).

The Court therefore has no other number to turn to except for Defendant's asserted value. The Court assesses each of Defendant's proffered calculations in turn to see if they are justified by the allegations made in the Complaint. *See Perez*, 131 F.4th at 809 (violation rates must be justified). These calculations include: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest breaks; (5) failure to

1  timely pay final wages at termination; and (6) failure to provide accurate itemized
2  wage statements.  The Court concludes that most of the numbers proffered by
3  Defendant are reasonably supported by the allegations in Plaintiff's FAC.  While
4  Defendant's numbers are clearly calculated in a way to maximize the amount in
5  controversy, they are, for the most part, consistent with the general language used by
6  Plaintiff in describing the frequency of alleged violations and are thus permissible.

### 1. Failure to Pay Minimum and Straight Time Wages

Plaintiff alleges that Defendant failed to pay minimum and straight time wages in violation of California Labor Code sections 204, 1194, 1194.2, and 1197.  (FAC ¶ 32–41.)  Plaintiff describes these violations as occurring during "all relevant times" and notes that "[b]y failing to keep adequate time records . . ., Defendants have made it difficult to calculate the full extent of minimum wage compensation due Plaintiff and the Class."  (*Id.* ¶¶ 34, 38.)  In its briefing, Defendant states that Plaintiff's allegations put $2,996,693.28 at controversy for these alleged violations, after imputing the most frequent legally permissible occurrence calculations and the employees' wage.  (ECF No. 1, containing Petition for Removal, at 9.)

This number is based on calculations that Defendant owes restitution in the amount of 4 minutes (0.07)[4], multiplied by $22.00 per hour (average hourly wage for putative class members), multiplied by 123 putative class members, multiplied by 260 workdays per year, and multiplied by 4 years (the window for the alleged violations), equaling $196,996.80 total.  (*Id.*)  The total number also includes liquidated damages under Labor Code section 1194.2, which is the amount equal to wages unlawfully unpaid and interest thereon, calculated at $196,996.80 (baseline) plus 10% interest of $19,699.68, equaling $216,696.48.  Finally, the total number includes penalties under Labor Code section 1197.1, which are $100 per initial violation for each employee and $250 for each subsequent pay period violation for each employee.  (*Id.*)  These total

---

[4] Defendant derives the 4 minutes calculation from *Troester v. Starbucks*, 5 Cal. 5th 829 (2018), in which the California Supreme Court viewed that threshold as permissible (i.e., not de minimis).

$100 (statutory initial violation penalty) multiplied by 123 prospective class members, equaling $12,300.00 for the initial violations, plus $250 (statutory subsequent violation penalty) multiplied by 123 prospective class members, multiplied by 21 subsequent pay periods each year, and multiplied by 4 for the number of years (the window for the alleged violations), which, according to Defendant's calculations, totals $2,583,000.00.[5] (*Id.*)  All together, this yields the amount of $2,996,693.28.

Nothing in the FAC contradicts these calculations.  In describing the violations, Plaintiff utilizes broad language such as "at all relevant times," and notes the difficulty of deducing exact calculations.  (FAC ¶¶ 34, 38.)  Plaintiff also notes that while she was "typically scheduled to work at least five days in a workweek and at least eight hours per day, . . . [she] regularly worked more than eight hours in a workday and/or more than forty (40) hours in a workweek."  (*Id.* ¶ 14.)  There is no limiting language attached to "regularly."  (*Id.*)  While it is true that other, less generous valuations could be consistent with a "regular" practice, or one that occurred "at all relevant times," the Defendant need only show that its interpretation is a reasonable one.  *Perez*, 131 F.4th at 809.  The Court cannot say that Plaintiff's allegations that the violations occurred at "all relevant times" and that Plaintiff worked "regularly" forecloses the possibility that the violation happened at every opportunity that arose, and thus, Defendant's calculations are in line with the described violations.  *See Perez*, 131 F.4th at 809.  Accordingly, the Court finds that Defendant's proffered amounts are reasonable and justified by the Complaint.

### 2. Failure to Pay Overtime Wages

Plaintiff alleges that Defendant failed to pay overtime wages in violation of Labor Code Sections 1194 and 1198.  (FAC ¶¶ 42–50.)  Plaintiff describes these violations as occurring during "all times relevant" and notes that "[b]y failing to keep

---

[5] The Court observes that Defendant's proffered final number does not include the $12,300 initial violation.  The Court accepts Defendant's lower number, but notes that ultimately, any discrepancy is immaterial as the amount in controversy greatly exceeds the $5 million threshold.

8

adequate time records . . ., Defendants have made it difficult to calculate the full extent of minimum wage compensation due Plaintiff and the Class." (*Id.* ¶¶ 46, 48.) In its briefing, Defendant states that Plaintiff's allegations put $5,052,967.92 in controversy for these alleged violations. (ECF No. 1, containing Petition for Removal, at 9.)

This number is based on calculations that Defendant owes restitution in the amount of 4 minutes as a minimum permissible threshold plus 30 minutes for missed meal periods, allegedly causing overtime of 34 minutes per day (0.57/day), multiplied by an overtime rate of $33/hour (average overtime rate for putative class members), multiplied by 123 putative class members, multiplied by 260 workdays per year, multiplied by 4 years (the window for the alleged violations), totaling $2,406,175.20. (*Id.*) The total number also includes liquidated damages under Labor Code section 1194.2, which is the amount equal to wages unlawfully unpaid plus interest, calculated at $2,406,175.20 (baseline) plus 10% interest of $240,617.52. (*Id.*) However, Plaintiff does not claim liquidated damages here, so the Court will omit those calculations. (*See* Mot. at 15;) *see also Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("[A] plaintiff [is] the master of the claim and may avoid federal jurisdiction by pleading different facts.") (internal quotations omitted). Altogether, this yields a total amount of $2,406,175.20.

Nothing in the FAC contradicts these calculations. In describing the violations, Plaintiff utilizes broad language such as "at all times relevant," and notes the difficulty of deducing exact calculations. (FAC ¶¶ 46, 48.) As discussed above, Plaintiff alleges that while she was "typically scheduled to work at least five days in a workweek and at least eight hours per day, . . . [she] regularly worked more than eight hours in a workday and/or more than forty (40) hours in a workweek." (*Id.* ¶ 14.) And similar to the claim related to the Failure to Pay Minimum and Straight Time Wages, there is no limiting language attached to "regularly." (*Id.*) Plaintiff's allegations that the violations occurred at "all times relevant" and that Plaintiff worked "regularly" does not foreclose

the possibility that the violation happened at every opportunity that arose, and thus, Defendant's calculations are in line with the described violations. *See Perez*, 131 F.4th at 809. Accordingly, the Court finds that Defendant's proffered amounts, after the Court's modification, are reasonable and justified by the Complaint.

### 3. Failure to Provide Meal Periods

Plaintiff alleges that Defendant failed to provide meal periods in violation of Labor Code section 226.7. (FAC ¶¶ 51–54.) Plaintiff describes this violation as occurring "regularly, but not always." (*Id.* ¶ 17.) In its briefing, Defendant states that Plaintiff's allegations put $1,039,350.00 in controversy for these alleged violations. (ECF No. 11, containing Petition for Removal, at 9.)

This number is based on calculations that Defendant owes employees for one hour of pay each meal period missed at $22 (average hourly wage for putative class members), multiplied by 123 putative class members, multiplied by 250 meal periods per year, multiplied by 4 years (the window for the alleged violations), equaling $2,706,000.00. (*Id.*) Defendant also posits that there may be liquidated damages or penalties in the amount of $50 per each initial violation per employee, calculated at $6,150.00. (*Id.*) This is added to the subsequent violations of $100 multiplied by 123 employees, multiplied by 21 pay periods per year, multiplied by 4 years, equaling $1,033,200.00, for a minimum amount of $1,039,350.00. (*Id.*)

These calculations are not justified by the Complaint. In the FAC, Plaintiff makes allegations that Defendant "regularly, but not always" required the class members to work through their meal and rest breaks. (FAC ¶ 17.) Yet, Defendant calculates a one-hundred-percent meal and rest break violation rate. (ECF No. 1, containing Petition for Removal, at 9.) The limiting language of "but not always" is incompatible with Defendant's proposed one-hundred-percent violation rate, and therefore, these calculations are not reasonable. *See Perez*, 131 F.4th at 809. Accordingly, the Court will strike these calculations from the total amount.

////

### 4. Failure to Authorize and Permit Rest Periods

Plaintiff alleges that Defendant failed to authorize and permit rest periods in violation of Labor Code section 226.7.  (FAC ¶¶ 55–58.)  Plaintiff describes this violation as occurring "regularly." (*Id.* ¶ 18.)  In its briefing, Defendant states that Plaintiff's allegations put $2,706,000.00 in controversy for these alleged violations. (ECF No. 16 at 15.)

This number is based on calculations that Defendant owes $22 per hour (average hourly wage of putative class members) for each rest period missed, multiplied by 123 putative class members, multiplied by 250 rest periods per year, multiplied by 4 years (window for the alleged violations), totaling $2,706,000.00.

Nothing in the FAC contradicts these calculations.  In describing the violations, Plaintiff utilizes broad language such as "regularly." (FAC ¶ 18.)  There is no limiting language attached to "regularly." (*Id.*)  Moreover, Plaintiff specifically alleges that "Defendants made it impossible or impracticable to take these uninterrupted rest periods.  (FAC ¶ 57.)  Accordingly, the Court finds that Defendant's proffered amounts are reasonable and justified by the Complaint.

### 5. Failure to Timely Pay Final Wages at Termination

Plaintiff alleges that Defendant failed to timely pay final wages at termination in violation of Labor Code sections 201 through 203.  (FAC ¶¶ 59–65.)  Plaintiff avers that Defendant's violation "was not a single, isolated incident."  (*Id.* ¶ 19.)  The penalty for this violation is calculated as the continuation of wages for up to 30 days.  Cal. Labor Code § 203(a).  In its briefing, Defendant states that Plaintiff's allegations put $649,440.00 in controversy for these alleged violations.  (ECF No. 1, containing Petition for Review, at 9–10.)

This number is based on calculations that Defendant owes $22 per hour (average hourly wage for putative class members), multiplied by 123 putative class members, multiplied by eight hours (putative class member's average workday), multiplied by 30 days (statutory window), totaling $649,440.00.  (*Id.*)

11

Nothing in the FAC contradicts these calculations. In describing the violations, Plaintiff utilizes broad language when describing the alleged violation, such as stating the language "was not a single, isolated incident." (FAC ¶ 19.) A violation rate described as being more than a "single, isolated incident," is understood by the Court as being more than one violation. Defendant's proffered violation rates are therefore not foreclosed by Plaintiff's language of "not a single, isolated incident," and thus, the calculations are congruent with the described violations. *See Perez*, 131 F.4th at 809; *see also Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 WL 1501576, *4 (N.D. Cal. Apr. 5, 2019) (Defendant's "assumption of 100% violation for unpaid wages [is] reasonable–that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed [defendant company] during the statutory period was due unpaid wages."). Accordingly, the Court finds that Defendant's proffered amounts are reasonable and justified by the Complaint.

### 6. Failure to Provide Accurate Itemized Wage Statements

Plaintiff alleges that Defendant failed to provide accurate itemized wage statements in violation of Labor Code section 226(a). (FAC ¶¶ 66–73.) In its briefing, Defendant states that Plaintiff's allegations put $928,650.00 in controversy for these alleged violations. (ECF No. 1, containing Petition for Removal, at 10.)

This number is based on calculations of $50 per the first violation per each employee (as provided by California Labor Code section 226(e)(1)), multiplied by 123 putative class members, equaling $6,150.00. (*Id.*) This is in addition to calculations of $100 per subsequent violation per pay period per each employee (as provided by California Labor Code section 226(e)(1)), multiplied by 123 putative class members, multiplied by 25 subsequent pay periods, multiplied by three years (under statutes of limitation), totaling $922,500.00, which Defendant then adds $6,150 to, reaching a grand total of $928,650. (*Id.*) However, under California Labor Code section 226, this violation is capped at $4,000 per employee. Cal. Lab. Code § 226(e)(1). Therefore,

the Court will reduce this amount to $492,000.00, which is $4,000 multiplied by 123 putative class members.

Nothing in the FAC contradicts these calculations. The Court's modification of Defendant's calculations is in line with the described violations. *See Perez*, 131 F.4th at 809; *see also Cabrera v. S. Valley Almond Co., LLC*, No. 1:21-cv-00748-AWI-JLT, 2021 WL 5937585, *10 (E.D. Cal. Dec. 16, 2021) ("The Court found above that it is reasonable to assume one overtime violation, one minimum wage violation, one meal break violation and one rest period violation per week for each putative class member. It follows that each of the bi-weekly wage statements Defendants issued to putative class members during the period in question contained an error of some sort."). Accordingly, the Court finds that the modified Defendant's proffered amounts are reasonable and justified by the Complaint.

### 7. Total Amount in Controversy

The Court finds that the total amount of permissible calculations are as follows: (1) Failure to provide minimum and straight time wages ($2,996,693.28); (2) Failure to pay overtime wages ($2,406,175.20); (3) Failure to provide meal breaks ($0); (4) Failure to authorize meal and rest breaks ($2,706,000.00); (5) Failure to timely pay final wages at termination ($649,440.00); (6) Failure to provide accurate and itemized wage statements ($492,000.00). In total, these amount to $9,250,308.48. This is well over the $5,000,000 threshold for removal under CAFA.

Simply stated, Plaintiff's pleadings do not allege the size of the proposed class or the total amount in controversy. Defendant therefore acted properly by assessing from its own data whether the requirements of removal under CAFA are satisfied. The thirty-day window for removal began once Defendant learned that CAFA's removal elements could be satisfied, not from the date of the initial pleadings. Defendant's proffered amounts are largely reasonable, and even with striking improperly calculated amounts, it is clear that the $5 million threshold has been met.

Plaintiff seeks to rebut Defendant's proffered amount by arguing that it is overbroad. For example, Plaintiff posits that Defendant's calculations improperly account for the entire class worked during the entire four-year window the class would be open. (ECF No. 14 at 9.) But Defendant's explanation – that the full putative class size could actually be up to 214 members, but that because not all those members worked full time, it estimated the full-time equivalent to be approximately 123 putative class members and used that number for calculations (*see* ECF No. 14 at 14) – is not irreconcilable with the allegations in Plaintiff's FAC. (*See* ECF No. 16 at 9.) "[A] removing defendant may rely on some assumptions to establish the amount in controversy." *Perez*, 131 F.4th at 809. Defendant's numbers, while possibly inflated, have not been shown to be unreasonable in light of the allegations in the operative complaint, especially given the lack of other number or evidence provided by Plaintiff.

Finding that Defendant is the only party that has submitted a proposed amount in controversy, and that that amount is at least tenably supported, the Court finds that Defendant's proposed amount-in-controversy over $5 million is acceptable.

### B. Plaintiff Has Not Sufficiently Demonstrated That the Local Controversy Exemption Applies

A party seeking to remand a matter back to state court after it has been removed under CAFA may do so under the local controversy exemption. 28 U.S.C. § 1332(d)(4). As relevant here, to avail of this exemption, Plaintiff bears the burden of proof showing that the following factors are satisfied:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant
>
> > (aa) from whom significant relief is sought by members of the plaintiff class;
> >
> > (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> >
> > (cc) who is a citizen of the State in which the action

|||
|---|---|
|1| was originally filed; and |
|2| (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed. |

28 U.S.C. § 1332(d)(4)(A)(i); *Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015).

The Court finds that Plaintiff has not satisfied this burden. As to the first factor, the proposed class consists of "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and 178 days before the filing of the initial complaint in this action and ending when notice to the Class is sent." (FAC ¶ 25.) While it may well be that many of these class members are citizens of California, Plaintiff provides no evidence to support her assertion that two-thirds of this proposed class are California citizens. *See Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) ("[A] burden of proof usually requires the party bearing the burden to present evidence upon which the district court may rely to find that the party has met its burden."). She merely asserts that "on information and belief, greater than two-thirds of the members of the class" are California citizens. (ECF No. 14 at 17.) The Court cannot rely on mere assertions to satisfy Plaintiff's burden of proof for this element. *See Mondragon*, 736 F.3d at 884 ("A complete lack of evidence does not satisfy this standard."). Plaintiff recognizes that her assertions may not be viable and preemptively asks the Court to allow for "jurisdictional discovery tailored to proving that more than two-thirds of the putative class are citizens of California." (ECF No. 14 at 17.) However, Defendant counters that "[a]lmost half of the putative class is no longer employed with Defendant and neither Plaintiff or Defendant has knowledge of these class members' location." (ECF No. 16 at 17–18.) In light of this, the Court determines that discovery between the parties would not readily produce information as to the number of California citizens in the proposed class.

Finding that Plaintiff has not met her burden of proof for establishing that a sufficient number of class members are California citizens, and that this deficiency would not be remediable with additional discovery, the Court determines that the local controversy exception does not apply.

## CONCLUSION

The Court finds that this matter was properly removed under CAFA and that the local controversy exemption does not apply. Plaintiff's Motion to Remand (ECF No. 14) is DENIED.

IT IS SO ORDERED.

Dated:   **June 3, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC5 – Gist-Reed224-cv-03282.MTR